# IN THE UNITED STATED DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTOPHER W. WEBB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-12-58-JHP-SPS |
| ) | |
| MIKE OSBORNE and, ) | |
| MR. HAMILTON, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter comes on for consideration of Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment (Dkt. # 17) filed on June 6, 2012. The court has before it the plaintiff's complaint, the defendants' motion, a special report prepared at the direction of the court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), plaintiff's response to the motion, defendants' reply and plaintiff's sur-response to the motion. Additionally, the court is aware of the defendants' motion to strike plaintiff's sur-response and the plaintiff's motion for leave to file the document of supplemental information. For the reasons stated below, this court finds this action should be dismissed for failure to exhaust administrative remedies. Even assuming for purposes of argument that plaintiff had complied with the grievance process, based upon the special report submitted herein and the plaintiff's response thereto, this court finds plaintiff's claim is frivolous, and pursuant to Fed.R.Civ.P. 12(b)(6), should be dismissed for failure to state a claim for relief.

*Background*

Plaintiff alleges his Fifth, Eighth, and Fourteenth Amendment rights were violated on September 15, 2011, by Lt. Mike Osborne while he was on lockdown when Lt. Osborne refused to discuss in private why the plaintiff was being housed with (10) other men who weren't classified the same as the plaintiff and Osborne replied "for causing too many problem(s)." Plaintiff asserts that after Osborne said what he did, the other inmates stated they would take care of the plaintiff; so, Osborne left the housing area.

Additionally, the plaintiff claims a violation of his Fifth, Eighth and Fourteenth Amendment rights occurred on or about September 22, 2011, when Officer Hamilton removed him from his cell for a shower and left the pod, at which time the plaintiff was "jumped by (4) other inmate(s)." According to the plaintiff, the assault "stopped after about (10) minutes when Officer Hamilton came back, and told the other inmates to stop . . . ." The plaintiff says that Officer Hamilton and all jail staff had been informed that the plaintiff was not to be left unattended for safety reasons.

*Legal Analysis*

<u>*A. Standard for dismissal*</u>

Title 42 U.S.C. § 1983 provides a federal remedy against any person who, acting under color of state law, deprives another of his federal rights. *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). Two prima facie elements must be alleged in a 1983 complaint: 1) the defendant deprived the plaintiff of a right secured by the 'Constitution and laws' of the United States and 2) the defendant acted 'under color of law.' *Adickes v. S.H. Kress & Co.*,

2

398 U.S. 144, 150 (1970). Federal Rule of Civil Procedure 8(a)(2) sets up a liberal system of notice pleading in federal courts requiring only that the complaint include a short and plain statement of the claim. *Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008).

A civil rights claim should be dismissed only where it appears that the plaintiff could prove no set of facts entitling him to relief. *Meade v. Grubbs*, 841 F.2d 1512, 1516 (10th Cir. 1988) (citing *Owens v. Rush*, 654 F.2d 1370, 1378-79 (10th Cir. 1981)). In reviewing a claim for dismissal under Fed.R.Civ.P. 12(b)(6), all of the factual allegations in the complaint must be presumed true and construed in the light most favorable to the plaintiff. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). A *pro se* litigant's pleadings are held to less stringent standards than those drafted by lawyers and the court must construe them liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). At the same time, the district court can not assume the role of advocate for a *pro se* litigant and should dismiss claims that are supported by vague or conclusory allegations. *Hall*, 935 F.2d, at 1110.

The Prison Litigation Reform Act of 1996 ("PLRA") provides in part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n. 1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under

the PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). In deciding a motion to dismiss based on nonexhaustion, the court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

The Bryan County Jail Policy and Procedures regarding the inmate grievance process requires an inmate to first try to resolve his complaint informally by submitting a "Request to Staff." If that does not resolve the problem, the inmate must file a formal grievance which must have the request to staff attached "as proof that an informal attempt has been made by the inmate to resolve the situation at the lowest level position." Additionally, a grievance must be filed within 48 hours of the problem or action. *See*, Dkt. 16-2. Further, the Bryan County Jail has a system for tracking grievances and staff members are required to assist inmates in completing grievances "if the inmate requests assistance." *Id.*, at p. 4.

According to the plaintiff's response to the defendants' motion (Dkt. # 18), the plaintiff did exhaust his remedies. Plaintiff submits no documentation, however, to support his allegations.

Despite the plaintiff's allegations, it appears that he was housed in a two man isolation cell #14 after requesting not to be placed in pod # 36. *See*, Dkt. # 16-1, at ¶3. Although the video recording submitted as Exhibit 3 to the Special Report (Dkt. # 16-3) has no sound, it clearly establishes that the plaintiff's cell door was opened by an inmate and the plaintiff interacted with the inmates in cell # 13 for almost an hour, eating his lunch and reading some

4

papers, before the plaintiff goes back to his cell and then proceeds to the shower area by himself. Deputy Hamilton did not, as alleged, accompany the plaintiff to the shower area. Furthermore, nothing within the plaintiff's actions or demeanor during this time period indicates the plaintiff is concerned about his own safety.

Plaintiff remained in the shower area for approximately eight (8) minutes and then comes back to his cell and begins dressing. While the plaintiff is dressing Inmate Prough can be seen getting out of his bunk and attempting to close the door to the plaintiff's cell. The plaintiff is able to keep his cell door from closing all of the way and he comes out of his cell and proceeds to Prough's bunk. It appears from the video that the plaintiff is striking Inmate Prough although Inmate Prough's body is not observable on the video. According to several inmates, the plaintiff grabbed Inmate Prough by his shirt, ripping his shirt and then head-butted or attempted to head-butt him. See, Dkt. #16-7, at pp. 10-15. Thereafter, the plaintiff backs away from Prough's bunk and both the plaintiff and Prough take off their t-shirts. As they are strutting around inside cell # 13, like boxers getting ready for a showdown, the plaintiff is seen taking off his shoes. Inmate Prough then walks over to cell # 14 and opens the cell door completely, following the plaintiff into the cell. For approximately five minutes, Prough is seen standing at the doorway of the plaintiff's cell arguing with the plaintiff, although the plaintiff is out of sight during this argument. Then, Prough is seen lunging toward the plaintiff inside the cell backing out of the cell and arguing for close to six more minutes before backing out of the cell a second time, at which time four other inmates are seen coming up behind Inmate Prough at the doorway of the plaintiff's cell. Inmate

5

Prough then begins bouncing around with his fist up in a fighting position lunging at the plaintiff a third time, disappearing into the cell and both the plaintiff and Inmate Prough can be seen at times swinging their fists and kicking at each other. Inmate Prough backs toward the doorway of the cell again along with the four other inmates. Seconds later, Inmate Prough can be seen entering the cell swinging at the plaintiff but quickly disappears out of sight. After watching for a few seconds, the other four inmates enter the cell and appear to be swinging and kicking at someone and then, a few seconds later, Inmate Prough and the four other inmates come out of the plaintiff's cell and close the door to the cell. Again, while the Plaintiff has alleged the assault was stopped by Officer Hamilton after about ten minutes, the video clearly shows the actual assault lasted only a few seconds and the inmates stopped the assault on their own, leaving the plaintiff's cell and closing his cell door.[1]

Moreover, the plaintiff's allegations regarding Lt. Osborne's response to a question on September 15, 2011 being the catalyst for the assault are contradicted by his own written statement following the assault in which he claims the assault occurred because two (2) days prior to the assault, or on September 20, 2011, Metcalf and Ross had learned that the plaintiff was or had been a state's witness. *See*, Dkt. # 16-5, at p. 3.

Finally, as to the plaintiff's allegations that he was denied medical treatment and that charges were not filed against the other inmates involved, this court finds plaintiff has not

---

[1]Plaintiff points out, in his response to the defendants' motion (Dkt. # 18), that two inmates in the cell area say the fight was stopped when inmates pulled Prough off of the plaintiff and Officer Hamilton entered the cell area. *See*, Dkt. # 16-7, at pp. 10-11. After watching the video, it is clear that the inmates did not pull Inmate Prough off of the plaintiff. Additionally, the video shows no guard actually entered the cell. If, however, the inmates statements that the "guard walked in" or "Mr. Hamilton came in" refer to a guard walking by the cell area, it would appear that the unnamed guard or Hamilton was the reason the assault stopped as opposed to Officer Hamilton having any personal participation in the actual assault.

submitted any evidence to establish that either Osborne or Hamilton took any actions to deprive the plaintiff medical care. Rather, the Special Report shows the plaintiff declined medical care on at least two occasions. *See*, Dkt. # 16-4, at ¶8 and Dkt. # 16-5, at ¶4. Similarly, the plaintiff has not submitted any evidence to establish that either Osborne or Hamilton were involved in the investigation against the other inmates, or made any decisions regarding whether or not criminal charges would be brought against anyone as a result of this altercation. The Special Report establishes that Deputy Sheriff Joey Tucker was dispatched to the Bryan County Jail to investigate the assault. *See*, Dkt. #16-5. Additionally, after an investigation into the incident occurred, Sgt. Johnny Lee Bates submitted his reports to the Bryan County District Attorney's office for a determination as to whether or not charges should be filed. *See*, Dkt. # 16-7.

Plaintiff has provided absolutely no evidence to rebut the findings of the Special Report which establish neither Lt. Osborne or Officer Hamilton[2] personally participated in violating the plaintiff's constitutional rights or to establish that he exhausted his administrative remedies before bringing this lawsuit. As a result, this court finds the plaintiff has failed to exhaust his administrative remedies and is, therefore, barred from pursuing his § 1983 claim under the PLRA. Assuming for purposes of argument that the plaintiff had complied with the Bryan County Jail's grievance process, the plaintiff has failed to establish that there is any genuine dispute as to any material fact. Therefore, this court finds, pursuant

---

[2]Plaintiff implies, in his second motion to supplement (Dkt. # 22), that subsequent events surrounding Lt. Osborne and Officer Hamilton help prove his allegations. This court disagrees. Plaintiff can not prove his case by relying on events occurring after his cause of action arose.

7

to Rule 56(a), Defendants Osborne and Hamilton are entitled to summary judgment as a matter of law both in their individual and official capacity.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. Defendants' Motion to Dismiss, or alternatively Motion for Summary Judgment (Dkt. # 17) is **granted** and Plaintiff's civil rights complaint (Dkt. # 1) is **dismissed with prejudice** for failure to exhaust administrative remedies and for failure to state a claim upon which relief may be granted. Additionally, pursuant to 28 U.S.C. § 1915(g), this Court finds this action was frivolous and therefore, this dismissal counts as a strike under the Prisoner Litigation Reform Act.

2. The Defendants' Motion to Strike Plaintiff's Supplemental Brief (Dkt. # 21) and the Plaintiff's Motion for Leave to File Supplemental Information (Dkt. # 22) are **denied** as moot.

3. A separate judgment shall be entered in favor of the defendants and against plaintiff.

4. Plaintiff remains obligated to pay in monthly installments the **$350.00** filing fee incurred in this matter.

It is so ordered on this 5th day of October, 2012.

James H. Payne
United States District Judge
Eastern District of Oklahoma